UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MARK B. CLARKE,

                Plaintiff,                 **REPORT AND RECOMMENDATION**
                                                         **06 CV 4358 (SLT)(LB)**

-against-

JAMES PEAKE, M.D.,

                Defendant.
------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

Plaintiff, Mark B. Clarke, brings this *pro se* action claiming defendant, James B. Peake, M.D., the Secretary of the Department of Veterans Affairs, breached a settlement agreement. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The Honorable Sandra J. Townes referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendant's motion for summary judgment should be granted.

## BACKGROUND

The following facts are not in dispute unless otherwise noted.[2] On August 1, 2003 plaintiff filed a complaint with the Department of Veterans Affairs ("VA") alleging employment

---

[1] Defendant provided plaintiff with the requisite notice pursuant to Local Civil Rule 56.2.

[2] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendant filed a 56.1(a) statement, however, plaintiff did not include his own 56.1(b) counter-statement. The Court does not rely on the statement of undisputed facts contained in defendant's Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts that are supported by admissible evidence and not controverted by the record.

discrimination on the basis of race. (Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts "Def. Rule 56.1," ¶2; Exhibits in Support of Defendant's Memorandum in Support of Motion to Dismiss or in the Alternative for Summary Judgment "Def. Exhibit" 2.) At the time his complaint was filed, plaintiff had been employed as an electrician by the VA for sixteen years. (Def. Exhibit 1 at 2.) On March 30, 2005, plaintiff and his counsel and the VA's Regional Counsel, Sharon J. Weiner, Esq., attended a settlement conference at the Equal Employment Opportunity Commission ("EEOC"). (EEOC Hearing Tr., March 30, 2005, included as Def. Exhibit 3, "EEOC Tr.".) The parties told the Administrative Law Judge ("ALJ"), Charles G. Shubow, that they had reached a settlement agreement resolving the complaint. (EEOC Tr. 3:2-13.)

The parties orally stipulated to the following settlement terms: (1) the VA would provide annual EEO training for supervisors in the New York Health Harbor Care System, including training to prevent race discrimination (EEOC Tr. 3:14-18; 6:16-19); (2) a system would be established rotating an acting electrical shop foreman at the St. Albans campus, and plaintiff would be first in line to serve as acting foreman when the foreman was absent (id. at 3:19-25; 4:1-3); (3) the VA would pay plaintiff $1,000 for attorney's fees (id. at 4:5-6); (4) plaintiff would withdraw his two pending Agency and EEO cases (id. at 4:7-14); (5) plaintiff would not file any "complaints, claims or grievances in regard to any actions taken by the VA prior to the date of this settlement agreement" (id. at 4:15-18); (6) plaintiff would be authorized to take, through the VA employee education system, an entry level course in heating, ventilation, and air conditioning ("HVAC") and refrigeration, and a course for CFC certification, and that upon requesting study time from his supervisor, plaintiff would receive study time in the amount

recommended by Employee Education System ("EES") for each of those courses, the VA would pay for plaintiff to take the CFC certification tests and authorize his absence in order to take the tests (id. at 4:21-5:3); (7) and the VA would place posters at the St. Albans and Brooklyn campuses of the VA New York Harbor Health Care System to notify employees of their rights regarding sexual harassment and race discrimination (id. at 6:2-8). After the settlement terms were stated, plaintiff was asked on the record by ALJ Shubow, "do you agree to settle it for these terms?" (Id. at 6:24-25.) Plaintiff replied, "[y]es." (Id. at 7:2.)

On June 14, 2005, Mr. Monteleone, the Facility Manager at St. Albans, received a memorandum from the Chief of Engineering Service, Mr. Mallen, directing him to implement a standard operating procedure for rotation of an acting supervisor of the AC/Electrical Shop. (Def. Exhibit 5 at B.) On the same day, Mr. Monteleone sent out a memorandum to Carlos Rivera, the Maintenance and Repair Supervisor, instructing him on how to implement the supervisor rotation system. (Id. at C.) Mr. Monteleone explains that since plaintiff was the only person interested in becoming a supervisor, plaintiff was therefore the acting supervisor of the AC/Electrical Shop at St. Albans whenever the supervisor was absent. (Id. ¶5.) Plaintiff, however states that he was not the acting supervisor whenever the supervisor was absent as the duties of his foreman were carried out by the foreman's superiors when the foreman was absent. (Clarke Dep. 19:1-15, May 8, 2007.)[3] Plaintiff states that his supervisor's duties included signing off on work orders, ordering materials, delegating overtime, and attending meetings. (Id. at 16:9-25.) Plaintiff states that these duties were not designated to him when his supervisor was absent. (Id. at 13:2-4.) Plaintiff also argues that there was no official memoranda issued saying that he was the acting foreman upon his supervisor's absence. (Id. at 8:15-21.) Plaintiff was

---

[3] The full transcript of plaintiff's deposition was filed upon the Court's request and docketed as entry 38.

3

unaware of the existence of the Mallen and Monteleone memoranda. (Id. at 18:15-21.) On October 9, 2006, plaintiff "voluntarily" left his position with the St. Albans VA for a position at the James J. Peters VA Medical Center in Bronx, New York. (Def. Exhibit 6, ¶5.)

On July 25, 2005, Ms. Weiner sent an email to plaintiff's attorney offering plaintiff the option of enrolling in an entry level HVAC and refrigeration course and CFC certification course. (Def. Exhibit 5,¶6.) Plaintiff states however that the one CFC certification course offered by the VA pursuant to the settlement agreement would be insufficient to prepare him for the CFC certification test. (Plaintiff's Opposing Motion For Summary Judgment "Plaintiff's Opp." at 16.) Plaintiff argues that he would need to take thirteen courses in order to be prepared. (Id.) Defendant, however, includes a declaration by Mr. Monteleone, who states that he has personal knowledge of the training courses and that the CFC certification course was the appropriate course for plaintiff to take, but plaintiff never requested any training classes. (Def. Exhibit 5, ¶¶ 1-3.) Plaintiff acknowledges that he could have applied for any course in the EES, but that he did not apply. (Clarke Dep. 34:6-11.) Plaintiff also testified that he no longer wanted CFC certification. (Id. at 38:7-9.) Plaintiff maintains there was no refrigeration course he could have taken as the refrigeration course offered by the VA required training in refrigeration as a precursor for taking the course and no entry-level course existed. (Id. at 44:9-25.)

On August 24, 2005, plaintiff filed a letter with the VA alleging that the agency had breached the settlement agreement. (Def. Exhibit EEOC Cases.) Plaintiff raised that the VA never implemented the rotation of the electrical shop foreman and that the HVAC and CFC certification classes were never offered. Plaintiff also stated that posters advising employees of their rights regarding discrimination were never posted. (Def. Exhibit 6 at D, ¶1.) Plaintiff stated that he wanted a written apology and information on whether the VA had ever offered

4

supervisors sensitivity training to prevent discrimination. (Id. at D, ¶¶ 3,4.) Finally, plaintiff sought higher pay for the time he served as acting supervisor and sought to take a Health Care Electrician course. (Id. at D, ¶ 6; Def. Exhibit at EEO Cases.)

On October 24, 2005, Counsel for the VA responded to plaintiff's letter. (Def. Exhibit 6 at D.) Counsel stated that on August 31, 2005, plaintiff met with an EEO specialist for the VA New York Harbor Healthcare system who "attempted" to show plaintiff a poster that was put up on the St. Albans Campus. (Id. ¶1.) Plaintiff stated that he wanted a different poster. (Plaintiff's Opp. at 16.) Plaintiff acknowledges that while there were posters regarding racial discrimination on the St. Albans Campus, no new posters were posted. (Clarke Dep. 57:12-21.) The VA's October 24, 2005 letter also informed plaintiff that supervisors were required to attend sensitivity training on April 11-12, 2005. (Def. Exhibit 6 at D, ¶4.) Plaintiff acknowledges that annual training sessions were held to prevent workplace discrimination. (Clarke Dep. 8:7-11.) Nevertheless, plaintiff states that the training was ineffectual and race discrimination persisted. (Id. at 9:4-6.) Plaintiff also argues that he was unaware at the time of settlement that the VA already had an anti-discrimination training policy in place. (Complaint at 6.)

On February 10, 2006, the VA issued a Final Agency Determination ("FAD") stating that the VA had fully complied with the terms and conditions of the settlement agreement. (Def. Rule 56.1 ¶6.) On July 6, 2006, the EEOC affirmed the VA's FAD and on August 10, 2006, denied plaintiff's request for reconsideration of its decision. (Id. ¶¶7, 8.) The EEOC's August 10, 2006 decision informed plaintiff of his right to file suit in an appropriate United States District Court. (Complaint at 10.)

Plaintiff filed the instant action pursuant to Title VII of the Civil Rights Act of 1964, 42 USC Sec. 2000(e), *et seq.* on August 18, 2006 alleging defendant discriminated against him on

5

the basis of his race and color by denying him equal terms and conditions of employment, subjecting him to a hostile work environment, retaliating against him for filing an EEO charge, and breaching the settlement agreement. (See Complaint.) At a conference held on February 1, 2007, plaintiff consented to withdraw all claims except for the breach of the settlement agreement claim. (See Transcript of Conference held on February 1, 2007, docket entry 37.) Plaintiff specifically alleges that (1) the VA already had a policy in place for racial sensitivity and discrimination training when he settled his case; (2) the VA failed to implement a foreman rotation system; (3) the settlement agreement was not valid because it was oral and not written;[4] (4) the VA failed to provide plaintiff the requisite classes and study time; and (5) the racial discrimination posters posted by the VA were unsatisfactory. (Plaintiff's Opp. at 15, 16,17.)[5] The parties conducted discovery. Defendant files its motion for summary judgment and plaintiff opposes the motion.

---

[4] Plaintiff states that he is "not satisfied" that the parties "never reach[ed] a contractual agreement on paper that was signed." (Plaintiff's Opp. at 16.) Aside from plaintiff's statements that he would prefer a written contract, plaintiff has failed to demonstrate that the parties agreement was invalid because it was oral instead of written. Plaintiff was clearly asked by the ALJ whether he agreed to the terms of the settlement and plaintiff stated, "Yes". (EEOC Tr. 6:24-7:2.) The "federal rule regarding oral stipulations does not differ significantly from the New York rule" so Courts apply New York and federal common law interchangeably. Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007) (internal citations omitted). "[A] voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed." Id. (citing Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2d Cir. 2005)). Therefore, a settlement entered into on the record is "one of the strongest and most binding agreements in the field of the law" and is entitled to substantial deference. Medinol Ltd. v. Guidant Corp, 500 F.Supp.2d 345, 353 (S.D.N.Y. 2007). The Court therefore finds that the oral settlement entered into by the parties before the ALJ on March 30, 2005 is binding and valid.

[5] Although defendant's motion for summary judgment addresses other claims plaintiff raised in the underlying administrative proceeding, i.e., defendant failed to: issue a written apology, provide higher pay, incorporate that plaintiff could take a Health Care Electrician course; plaintiff did not raise these claims in his instant complaint. (See Def. Memo.) Therefore, the Court does not address these claims.

# DISCUSSION

## I. Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Cadrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory

allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Furthermore, when a party is proceeding *pro se*, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Federation Employment and Guidance Service, 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## II. Plaintiff's Claims

Plaintiff alleges breach of the settlement agreement. "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004) (citing Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Id.; See Lewis v. New York Telephone Co., 643 F.Supp. 654, 660 (S.D.N.Y. 1984) ("Only if [defendant] contractually agreed to [] a promotion could [defendant] be held liable for the failure to promote . . . There is, however, no such obligation in the [] agreement and these claims must therefore be dismissed."); see also Luca v. County of Nassau, No. 04 Civ. 4898 (FB)(AKT), 2007 WL 1343670, 1 (E.D.N.Y. May 8, 2007) (defendant's post settlement decision to not select plaintiff was not a

8

breach of the settlement agreement since the agreement contains no guarantee of a future position with defendant). "Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by urg[ing] different interpretations in the litigation." Walker, 356 F.3d at 245. Furthermore, unsupported assertions that defendant breached the settlement agreement are insufficient to defeat a motion for summary judgment. See Johnson v. Frank, 828 F.Supp. 1143, 1152 (S.D.N.Y. 1993) (granting summary judgment where plaintiff presented no credible evidence or controlling case law to convince the Court to disagree with the EEOC determination in favor of defendant); see also Fletcher v. Potter, No. 02 Civ. 9385 (GWG), 2004 WL 1167378, 7 (S.D.N.Y. May 26, 2004) (granting summary judgment on a breach of settlement claim where plaintiff made no factual allegations regarding defendant's failure to comply.)

### A.  Annual Supervisor Training

The settlement agreement between the parties herein stipulated that the VA would provide annual EEO training for supervisors in the New York Health Harbor Care System, including training to prevent race discrimination. (EEOC Tr. 3:14-18; 6:16-19.) Plaintiff states that unbeknownst to him at the time of settlement, the VA already had a policy in place for supervisors to have sensitivity training to prevent race discrimination. (Complaint at 6.) Plaintiff concedes that "there has been annual EEO training," which included racial sensitivity training. (Clarke Dep. 8:7-11.) However, plaintiff alleges that discrimination still occurs despite the training. (Id. at 9:4-6.) Plaintiff's argument that racial discrimination persists despite the training does not demonstrate that defendant breached the settlement agreement. Nor does plaintiff's argument that there was already training in place when he settled his case demonstrate

that the VA breached the agreement. Plaintiff therefore fails to establish that the VA breached the agreement regarding the training of supervisors.

### B. Foreman Rotation

The settlement agreement stipulated that a rotation system would be established for an acting electrical shop foreman at the St. Albans campus, and plaintiff would be the first in line to serve as acting foreman when the foreman was absent. (EEOC Tr. 3:19 - 25; 4:1-3.) Plaintiff alleges that defendant breached the settlement agreement by failing to implement a foreman rotation system. (Complaint at 5.) Plaintiff argues that the duties of his foreman were carried out by the foreman's superiors when the foreman was absent. (Clarke Dep.19:1-15.) Plaintiff further argues that defendant never officially implemented the rotation system making him acting foreman upon his supervisor's absence. (Id. at 18:15-21.) Defendant, however, provides two separate memoranda instituting a standard operating procedure for the rotation of acting supervisor of the AC/Electrical Shop. (Def. Exhibit 5 at B, C.) Defendant maintains that because plaintiff was the only person interested in becoming a supervisor, plaintiff was the acting supervisor whenever the supervisor was absent; therefore, defendant argues there was no need for a rotation schedule. (Def. Memo at 8.) While plaintiff never received notice that he was acting foreman, defendant did send out a memorandum naming him as the acting foreman. Finally, while plaintiff did not perform the supervisory duties he thought he was entitled to perform as acting foreman, plaintiff has failed to demonstrate that defendant breached the settlement agreement with regard to this issue.

### C.     HVAC and Refrigeration Courses; CFC Certification Test

The settlement agreement stipulates that defendant will allow plaintiff to take an entry level HVAC and refrigeration course and a course to prepare him for CFC Certification. (EEOC Tr. 4:21-5:3.) Plaintiff alleges that defendant breached the settlement agreement by allowing him to take only one class to prepare him for CFC certification, which was insufficient. Plaintiff argues that he should have been able to take all thirteen classes offered through EES. (Complaint ¶5.) Defendant argues however that the CFC certification course offered to plaintiff by the VA was the appropriate course, but that plaintiff never requested to take any training classes. (Def. Exhibit 5 ¶¶ 1-3.) Plaintiff acknowledges that he was never denied access to any of the classes. (Def. Exhibit 6 ¶ 7.) Furthermore, plaintiff states that he no longer wants CFC certification. (Clarke Dep. 34:6-11; 38:7-9.)

In addition, defendant argues that it offered plaintiff an entry level HVAC and refrigeration course. (Def. Exhibit 6 ¶ 7.) Plaintiff, however, states that the refrigeration course offered by the VA required training in refrigeration as a precursor for taking the course and that no entry-level course existed, so there was no course plaintiff could take. (Clarke Dep. 44:9-25.) While plaintiff argues that there was no introductory level HVAC and refrigeration class he could take without training, plaintiff has failed to demonstrate that he requested any training or that the VA denied him any training. Therefore, plaintiff fails to demonstrate that the VA breached the settlement agreement regarding training. See Foulke v. Potter, No. 03 Civ. 6176 (SJF)(ETB), 2005 WL 1712229, 2 -3 (E.D.N.Y. July 20, 2005) (Court found no breach of settlement where USPS engaged in a good faith attempt to fulfill its obligation under the agreement).

### D. Posters Regarding Employees' Rights

The settlement agreement stipulated that the VA would place posters regarding employees' rights to be free from sexual harassment and discrimination at the St. Albans and Brooklyn campuses of the New York Harbor Health Care System. (EEOC Tr. 6:2-8.) Plaintiff concedes that posters were placed at the St. Albans and Brooklyn Campuses (Clarke Dep at 57:9-17), however, plaintiff alleges that defendant breached the settlement agreement by failing to create new posters advising employees of their rights to be free from racial discrimination after the settlement agreement (id. at 57:18-21). Defendant states that it "attempted" to show plaintiff the posters that would be posted when he met with an EEO specialist on August 31, 2005. (Def. Exhibit 6 at D.) The agreement does not stipulate, nor will the Court interpret the agreement to require, that the VA had a duty to create new posters. The agreement states that the VA would place posters at the St. Albans and Brooklyn campuses regarding employees' rights to be free from discrimination and sexual harassment. Plaintiff concedes that this was done. Plaintiff therefore fails to demonstrate that defendant breached the settlement agreement regarding the placement of anti-discrimination posters.

## CONCLUSION

Plaintiff has failed to demonstrate that defendant breached the terms of the settlement agreement. Accordingly, defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten day period. Failure to file a timely objection to ths Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 82 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140(1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: March 4, 2009
       Brooklyn, New York